NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____

AMIN A. RASHID,  :
 : Civ. No. 20-5947 (RMB-KMW)
          Plaintiff :
  v. :
 : **OPINION**
UNITED STATES OF AMERICA :
*et al.*, :
 :
          Defendants :
_____:

BUMB, District Judge

This matter comes before the Court upon Pro Se Plaintiff Amin A. Rashid's motion for reconsideration of this Court's Order dismissing his complaint without prejudice upon screening under 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1). (Mot. for Reconsideration, Dkt. No. 4.) For the reasons discussed below, the Court will deny Petitioner's motion for reconsideration but grant his request for an extension of time to file an amended complaint.

I.   BACKGROUND

   A.   The Complaint

Plaintiff, incarcerated in the Federal Correctional Institution in Fort Dix, New Jersey when he filed the present civil complaint, asserted jurisdiction over his claims for false arrest, malicious prosecution and conspiracy under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and Ohio state common law. In

his complaint, Plaintiff alleged the following. He is an African American of Islamic faith who was incarcerated at FCI-Elkton in Ohio at all relevant times alleged in the complaint. (Compl., ¶3, Dkt. No. 1.) In September 2017, Plaintiff worked in the law library where his supervisor, Ms. Callahan, terminated him from his job due to her animosity for his Islamic faith. (Compl., ¶¶9-11, Dkt. No. 1.) Callahan allegedly directed other staff in the Education Department to harass Plaintiff while he worked in the law library assisting other prisoners. (Id., ¶12.) Education Supervisor Ms. Grimm seized Plaintiff's legal materials and falsely accused him of abandoning his legal files and having illegal possession of other prisoners' legal files. (Compl., ¶13, Dkt. No. 1.) Plaintiff appealed and Lieutenant Shaffer returned his legal files to him. (Id., ¶¶14-19.)

On July 29, 2019, Lieutenant Shaffer falsely accused Plaintiff of assaulting another inmate. (Id., ¶20.) Plaintiff denied committing the assault but he was nonetheless placed in the Segregated Housing Unit ("SHU"). (Id., ¶¶21-22.) As of August 5, 2019, Plaintiff had not been seen by the UDC Committee, as required by Bureau of Prisons ("BOP") regulations. (Id., ¶¶25-27.) Plaintiff complained to Lieutenant Stewart about due process violations in connection with the prison disciplinary procedure. (Id., ¶28.) Plaintiff was denied access to his legal files while waiting for his disciplinary hearing. (Id., ¶30.)

2

At his prison disciplinary hearing on September 23, 2019, Plaintiff professed his innocence. (Id., ¶¶31-32.) After watching video of the alleged assault for ten seconds, the DHO dismissed and expunged the charges because he did not see evidence of an assault. (Id.) Two days later, Plaintiff was informed that he was being transferred out of FCI-Elkton and he would remain in the SHU until his transfer. (Compl., ¶33, Dkt. No. 1.) Plaintiff complained that the false accusations against him and his transfer were acts of discrimination because he is a Black Muslim and the inmate he was accused of assaulting was white and Jewish. (Id., ¶34.) Captain Grimm told Plaintiff that he had been found not guilty of assault and it was not the reason for his transfer. (Id., ¶35.) Plaintiff learned that members of the SHU Committee had voted to transfer him. (Id., ¶41.) Based on the above allegations, Plaintiff filed a notice of a Federal Tort Claim with the BOP on October 15, 2019. (Id., ¶40.) Plaintiff's administrative tort claim was denied on November 22, 2019. (Id., ¶43.)

At that time, Plaintiff had a custody classification score that permitted his transfer to a minimum security camp. (Id., ¶44.) His case manager, Ms. Brown, told him she had completed the paperwork for his transfer to FCI Fairton, a minimum security camp. (Id.) On December 16, 2019, Plaintiff arrived at FDC Philadelphia, where he was put in the SHU because Ms. Grimm had classified him with assaultive behavior. (Id., ¶46.) The following day, Plaintiff

3

arrived at FCI Fort Dix, where he learned Ms. Brown had classified him with a Greater Security Management Variable (MGTV), which made him ineligible for transfer to a prison camp for one year. (Id., ¶47.) Plaintiff's request for an administrative remedy was denied, stating that although the disciplinary charges were expunged, he had admitted to striking another inmate with his elbow. (Compl., ¶49.) Plaintiff is 71-years-old and suffers from hypertension, making him vulnerable to COVID-19, but for his custody classification, he would have been eligible for release under the CARES Act. (Id., ¶50.)

    B.   Dismissal of the Complaint Without Prejudice

The Court construed Plaintiff's FTCA claims as negligence claims, which may be brought under the FTCA by federal prisoners under certain circumstances. See 28 U.S.C. § 1346(b)(1). The Court, however, dismissed the claims because the FTCA limits negligence claims by prisoners for compensatory damages to those instances where the prisoner suffered a physical injury. (Opinion, Dkt. No. 2) (citing Mitchavi v. U.S., 345 F. App'x 727, 730 (3d Cir. 2009) (per curiam) (citing 28 U.S.C. § 1346(b)(2) and 42 U.S.C. § 1997e(e)). Plaintiff now seeks reconsideration of the Court's dismissal of his complaint without prejudice, asserting that his intentional tort claims fall under the FTCA's law enforcement proviso.

II. DISCUSSION

    A.    <u>Standard of Law</u>

Federal Rule of Civil Procedure 59(e), governs judgments entered by a district court, and Local Civil Rule 7.1(i)[1] more generally governs motions for reconsideration of district court orders. Similar to Local Civil Rule 7.1(i), which permits reconsideration where the district court overlooked a fact or controlling decision, under Rule 59(e), "a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." <u>Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999) (citing <u>North River Ins. Co. v. CIGNA Reinsurance Co.</u>, 52 F.3d 1194, 1218 (3d Cir. 1995)). Here, Plaintiff asserts error of law.

    B.    <u>Analysis</u>

Plaintiff claims that 28 U.S.C. § 2680(h) expressly permits intentional tort claims under the FTCA. (Mot. for Reconsideration, Dkt. No. 4 at 1.) "Known as the 'law enforcement proviso,' this

---

[1] Under Local Civil Rule 7.1(i), "a brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed."

5

provision extends the waiver of sovereign immunity to claims for six intentional torts … that are based on the 'acts or omissions of investigative or law enforcement officers.'" § 2680(h). Millbrook v. United States, 569 U.S. 50, 52–53 (2013). Sovereign immunity is waived for the intentional torts of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. 28 U.S.C. § 2680(h). "[T]he waiver effected by the law enforcement proviso extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest." Millbrook, 569 U.S. at 57. "Substantively, the FTCA makes the United States liable "to the same extent as a private individual under like circumstances," [28 U.S.C.] § 2674, under the law of the place where the tort occurred, [28 U.S.C.] § 1346(b)(1), subject to enumerated exceptions to the immunity waiver, [28 U.S.C.] §§ 2680(a)–(n)." Levin v. United States, 568 U.S. 503, 506–07 (2013). Here, the alleged torts occurred in Ohio.

Under Ohio law, "a claim for false arrest is indistinguishable from a claim for false imprisonment in that each claim requires proof that one was intentionally confined within a limited area, for any appreciable time, against his will and without lawful justification." Canfora v. Coiro, 2007-Ohio-2314, ¶ 32, 2007 WL

6

1395590 (quoting Evans v. Smith (1994), 97 Ohio App.3d 59, 70, 646 N.E.2d 217)). However, a prisoner fails to state a false imprisonment or false arrest claim where he was disciplined for "an alleged infraction of a prison rule that he was later found not to have violated" because the prisoner did not contest the conviction that was responsible for his prison sentence nor did he contest the lawfulness of his continued imprisonment." Saxton v. Ohio Dep't of Rehab. & Corr., 609 N.E.2d 245, 246 (Ohio Ct. App. 1992); see Wilson v. Tucker, No. 96CA2209, 1997 WL 30872, at *3 (Ohio Ct. App. Jan. 14, 1997) ("Being sent to disciplinary control while in prison does not state a complaint for false imprisonment") dismissed, appeal not allowed by Wilson v. Tucker, 78 Ohio St.3d 1489 (Ohio 1977); see Norris v. N. Cent. Corr. Inst., 2004-Ohio-5038, ¶ 15, 2004 WL 2804896 ("An inmate is not entitled to pursue damages under a false imprisonment theory for spending time in disciplinary confinement for rules infractions, which he was ultimately found not to have committed.)

Similarly, a prison disciplinary infraction cannot form the basis for a malicious prosecution claim. In Ohio, "jurisprudence has developed two lines of cases, one involving claims of malicious prosecution founded on criminal proceedings, and the other involving claims of malicious prosecution founded on civil proceedings." Trussell v. Gen. Motors Corp., 559 N.E.2d 732, 734 (Ohio 1990) (quoting Crawford v. Euclid Natl. Bank (1985), 19 Ohio

7

St.3d 135, 139, 483 N.E.2d 1168), Trussell overruled on other grounds by Robb v. Chagrin Lagoons Yacht Club (1996), 75 Ohio St.3d 264, 269, 662 N.E.2d 9)). The elements of a malicious prosecution claim in a criminal proceeding are "1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. Arrest of the plaintiff or seizure of his property is not a necessary element." Trussell, 599 N.E.2d at 734 (quoting Rogers v. Barbera (1960), 170 Ohio St. 241, 10 O.2d 248, 164 N.E.2d 162.)) The prison disciplinary proceedings described in the complaint do not constitute prosecution of a criminal proceeding, a necessary element of a malicious prosecution claim. See Wolf v. McDonnell, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.")

Plaintiff's claims fare no better if construed as malicious prosecution of a civil action under Ohio law. The elements of a claim for malicious prosecution of a civil action are "(1) the defendant maliciously instituted the prior proceedings against the plaintiff, (2) lack of probable cause for filing the prior lawsuit, (3) the prior proceedings terminated in the plaintiff's favor, and (4) the plaintiff's person or property was seized during the course of the prior proceedings. Miller v. Unger, 2011-Ohio-990, ¶ 13, 950 N.E.2d 241, 243 (citing Crawford v. Euclid Natl. Bank (1985),

8

19 Ohio St.3d 135, 139, 19 OBR 341, 483 N.E.2d 1168)). Plaintiff did not allege that defendants initiated a prior *lawsuit* against him, a necessary element of a claim.

Finally, Plaintiff submits that when he files an amended complaint, he will bring abuse of process claims under the FTCA. The Ohio Supreme Court has explained:

> The tort action termed "abuse of process" has developed for "cases in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." Prosser & Keeton, The Law of Torts (5 Ed.1984) 897, Section 121.
>
> …[T]he three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed2; and (3) that direct damage has resulted from the wrongful use of process.

Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A., 1994-Ohio-503, 68 Ohio St. 3d 294, 297-88, 626 N.E.2d 115, 118; see also Robb v. Chagrin Lagoons Yacht Club, Inc., 1996-Ohio-189, 75 Ohio St. 3d 264, 270, 662 N.E.2d 9, 14 (quoting Yaklevich, 626 N.E.2d 115, 118)). "[T]he term 'legal proceeding' as used to define the tort of abuse of process is confined to those proceedings where the judicial process is involved." Kensington Land Co. v. Zelnick, 94 Ohio Misc. 2d 180, 183, 704 N.E.2d 1285, 1288 (Com. Pl. 1997)). The Ohio Supreme Court explained, "[s]imply, abuse of process

9

occurs where someone attempts to achieve through the use of the court that which the court is powerless to order." Kensington Land Co., 704 N.E.2d at 1288 (quoting Robb, 75 Ohio St.3d at 271, 662 N.E.2d at 14)).

A prison disciplinary proceeding is not a court proceeding. For these reasons, Plaintiff has not established legal error by the Court that warrants reconsideration of the Order dismissing his complaint without prejudice. The Court will extend the time for Plaintiff to file an amended complaint.

III. CONCLUSION

For the reasons discussed above, the Court denies Plaintiff's motion for reconsideration.

An appropriate Order follows.

Date: April 12, 2021

                                                s/Renée Marie Bumb
                                                **RENÉE MARIE BUMB**
                                                **United States District Judge**